IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
August 13, 2024 Session

## STATE OF TENNESSEE v. MARTINEZ CARTER

**Appeal from the Circuit Court for Maury County**
**No. 19750      Russell Parkes, Judge**

_____

**No. M2023-00187-CCA-R3-CD**
_____

The defendant, Martinez Carter, appeals the order of the trial court revoking his probation and ordering him to serve his eight-year sentence in confinement. Upon our review of the record, the parties' briefs, and oral arguments, we affirm the revocation and disposition of the defendant's probation.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which JILL BARTEE AYERS and KYLE A. HIXSON, JJ., joined.

Mark Chapman, Nashville, Tennessee, for the appellant, Martinez Carter.

Jonathan Skrmetti, Attorney General and Reporter; Caroline Weldon, Assistant Attorney General; Brent Cooper, District Attorney General; and Ross Boudreaux, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### *Facts and Procedural History*

On October 5, 2010, the defendant pled guilty to four counts of possession of a Schedule II controlled substance with the intent to sell. The defendant was sentenced to an effective sixteen-year sentence, with two eight-year sentences running consecutively and the other sentences running concurrently. The trial court suspended the defendant's sentence to probation.

On August 31, 2022, the defendant was arrested for two instances of selling heroin and fentanyl to a confidential informant. On the same day, the defendant's probation officer filed a probation violation report, informing the court that the defendant had

committed nontechnical violations. The report stated the defendant violated Rule #1, requiring him to obey the laws of the United States, and Rule #2, prohibiting the possession of illegal drugs. The report also detailed the defendant's history of supervision. Most notably, the report showed that in January 2011, the defendant's probation had been partially revoked due to an arrest for possession of crack cocaine. The defendant served approximately nine years in confinement before being returned to supervised probation in May of 2020.

At the January 4, 2023 revocation hearing, the State presented the testimony of Detective Jeff Wray of the Maury County Sheriff's Department. Detective Wray testified about the investigation that led to the defendant's arrest for selling heroin and fentanyl. On July 15, 2021, a confidential informant called the defendant and set up a purchase of a gram of heroin. The phone call was recorded by the Tennessee Bureau of Investigation ("TBI"). Once the transaction was arranged, the confidential informant was outfitted with audio and visual transmitters and followed by Det. Wray to the predetermined location. Because the sale occurred on a dead-end street, Det. Wray temporarily lost sight of the informant during the sale but could see the transaction in real time through the transmitter. When the confidential informant arrived, he joined the defendant in his vehicle, sitting in the passenger side. The visual feed from the transmitter showed the defendant sitting in the driver's seat with a scale in his lap, appearing to be weighing marijuana.[1] The confidential informant gave the defendant money and left the car with a white powdery substance, confirmed by the TBI to be a mix of heroin and fentanyl.

On July 29, 2021, a sale was initiated by the confidential informant, setting up a second transaction with the defendant to purchase heroin. The phone call placed by the informant was recorded by the TBI, and the informant was outfitted with a visual and audio transmitter. While he temporarily lost sight of the informant when the informant entered a mobile home trailer—the predetermined location for the transaction, Det. Wray was able to see and hear the transaction inside the trailer through the transmitter.[2] The video feed showed the informant, again, purchased a white powdery substance, confirmed to be fentanyl and ANPP[3], another Schedule II substance, from the defendant.

Det. Wray was questioned concerning a third sale on July 13, 2021. During that sale, the confidential informant had set up a transaction with both the defendant and a second subject for the sale of heroin. However, the informant had returned from the transaction with a single plastic bag, having commingled the substances. As a result, no

---

[1] A screenshot of the video feed from July 15, 2021, was entered into evidence.
[2] A screenshot of video feed from July 26, 2021, was entered into evidence.
[3] 4-anilino-N-phenethyl-4-piperidine ("ANPP") is an immediate precursor for the Schedule II controlled substance fentanyl.

charges were brought against the defendant, and that transaction was not used as a basis for the probation revocation.

Det. Wray was then questioned about the screenshots taken from the video feed. Det. Wray initially testified that he had personally obtained the screenshots that were introduced into evidence as part of his preparation for testimony before the grand jury on the defendant's charges of selling heroin and fentanyl. However, during the State's redirect examination, it was revealed that Det. Wray had not provided the screenshots; nevertheless, Det. Wray testified that the fact that he did not obtain the screenshots did not change his identification of the person in the photographs as the defendant.

After hearing the proof and reviewing the entire record, the trial court found the defendant had previously had his probation revoked for possession of cocaine, and here, the defendant was arrested for two sales of heroin and fentanyl. The trial court, based upon the "unrefuted testimony of [Det. Wray]" and the visual transmission of the sales, found that the defendant violated the terms of his probation by possessing and selling heroin and fentanyl.

The trial court then turned to the second issue of the hearing: the disposition of the revocation. The trial court stated, "the defendant was involved in the exact same activity" as his first conviction and his first probation revocation. The trial court noted that during the defendant's 2011 probation revocation, the trial judge "could have revoked the [entire] sixteen-years, but [it] didn't," and instead, the trial judge "showed [the defendant] grace." Ultimately, the trial court ruled that the defendant should serve his sentence in confinement.

After the trial court had issued its ruling, the defendant requested a credit towards his judgment with time spent successfully on probation, or "street credit." The State objected as no argument or evidence had been placed on the record concerning the issue of street credit. In response to the State's objection, the defendant offered no argument or evidence in support of his contention but asked the trial court to take judicial notice from the file. Ultimately, the trial court denied the defendant's request for street credit but did order the defendant be given credit for any time spent incarcerated beyond the eight years of revoked probation in 2011.

The judgment of the trial court became final on January 4, 2023. The defendant filed a pro se Notice of Appeal. While the notice was dated January 15, 2023, it was stamped as filed by this Court on February 6, 2023. While Tennessee Rule of Appellate Procedure 4(a) requires a Notice of Appeal to be filed within thirty (30) days, a timely appeal is not jurisdictional; however, this Court may elect to waive the requirement in the interest of justice. Tenn. R. App. P. 4(a). Because the Notice of Appeal was dated within the allowed thirty-days and this Court marked it filed only two days after the thirty-day

period had run, we waive the timely filing requirement in the interest of justice. *See* Tenn. R. App. P. 4(a).

### *Analysis*

## I.      Trial Court's Determination of Revocation and Disposition

A trial court's decision to revoke probation is reviewed for an abuse of discretion with a presumption of reasonableness "so long as the trial court places sufficient findings and the reasons for its decisions as to the revocation and the consequence on the record." *State v. Dagnan*, 641 S.W.3d 751, 759 (Tenn. 2022). "A probation revocation proceeding ultimately involves a two-step inquiry. A trial court, upon finding by a preponderance of the evidence that a defendant violated the conditions of his or her probation, must determine (1) whether to revoke probation, and (2) the appropriate consequence to impose upon revocation." *Id.* at 753.

### a.   **The Trial Court's Decision to Revoke the Defendant's Probation Was Not an Abuse of Discretion.**

A trial court has statutory authority to revoke a suspended sentence upon finding that the defendant violated the conditions of the sentence by a preponderance of the evidence. Tenn. Code Ann. § 40-35-310, -311; *see State v. Turner*, No. M2012-02405-CCA-R3-CD, 2013 WL 5436718, at *2 (Tenn. Crim. App. Sept. 27, 2013). "The trial judge has a duty at probation revocation hearings to adduce sufficient evidence to allow him to make an intelligent decision." *State v. Leach*, 914 S.W.2d 104, 106 (Tenn. Crim. App. 1995) (citing *State v. Mitchell*, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991)). If a violation is found by the trial court during the probationary period, the time within which it must act is tolled and the court can order the defendant to serve the original sentence in full. Tenn. Code Ann. § 40-35-310; *see State v. Lewis*, 917 S.W.2d 251, 256 (Tenn. Crim. App. 1995).

To overturn the trial court's revocation, the defendant must show the trial court abused its discretion. *See State v. Shaffer*, 45 S.W.3d 553, 554-5 (Tenn. 2001). In revocation cases, the trial court abuses its discretion when the record contains "no substantial evidence to support the conclusion of the trial court that a violation of the conditions of probation has occurred." *Id.* at 554 (citing *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991)). "The evidence need only show the trial judge has exercised conscientious judgment in making the decision rather than acting arbitrarily." *Stamps v. State*, 614 S.W.2d 71, 73 (Tenn. Crim. App. 1980).

In the case at bar, the State established that the defendant had twice sold heroin and fentanyl to a confidential informant. Accrediting the testimony of Det. Wray, the trial court found there was satisfactory evidence that the defendant had violated the terms of his probation. Upon review, the record contains sufficient proof to support the trial court's decision. Det. Wray established the defendant, on two occasions, exchanged heroin and fentanyl for money. Therefore, based on the proof presented, the trial court did not abuse its discretion in revoking the defendant's probation. The defendant is not entitled to relief on this issue.

The defendant, however, challenges the trial court's reliance on Det. Wray's testimony relating to his identification of the defendant in the screenshots of the video feed. The defendant argues that the screenshots were not obtained from the feed but were from a "case file." While there does appear to have been some confusion by Det. Wray as to whether he or someone else pulled the screenshots that were entered into evidence, the trial court was satisfied that the State had laid the proper foundation for their authenticity and admissibility for identification purposes. Det. Wray testified that the screenshots were taken from the video feed provided by the informant, and the trial court found his testimony credible. "In probation revocation hearings, the credibility of witnesses is for the determination of the trial judge." *Carver v. State*, 570 S.W.2d 872. 875 (Tenn. Crim. App. 1978). Accordingly, this Court will not disturb the trial judge's credibility determination of Det. Wray's testimony.

The defendant also makes cursory mention of two other challenges to the trial court's findings. First, he contends the screenshots from the visual feed should not have been allowed into evidence because they were "hearsay." However, simply stated, photographs used for identification purposes are not, in and of themselves, statements. Since hearsay is defined as "a statement. . . offered in evidence to prove the truth of the matter asserted," the screenshots are not hearsay. Tenn. R. Evid 801. Therefore, the defendant's argument has no merit.

The defendant also references that Det. Wray testified that during the monitored transactions, he "lost sight of the confidential informant for some time." Based on our review of the record, this, however, is a mischaracterization of Det. Wray's testimony. During both transactions, Det. Wray testified that the moments where he "lost visual" on the informant, were temporary and due to his engagement in the transaction; however, he was still able to see and hear what was taking place as he had visual and audio surveillance of the informant from the transmitter. The trial court deemed Det. Wray's testimony unrefuted and credible. We will not disturb the trial court's credibility determination.

### b. The Trial Court's Determination to Incarcerate the Defendant as the Consequence of Revocation Was Not an Abuse of Discretion.

Having concluded that the trial court's determination to revoke the defendant's probation was not an abuse of discretion, this Court must separately review the trial court's determination of the consequence imposed on the defendant. When a defendant's probation is revoked, the trial court has "discretionary authority to: '(1) order confinement; (2) order execution of the sentence as originally entered; (3) return the defendant to probation on appropriate modified conditions; or (4) extend the defendant's probationary period by up to two years.'" *State v. Fleming*, No. E2017-02352-CCA-R3-CD, 2018 WL 6787580, at *2 (Tenn. Crim. App. Dec. 26, 2018) (quoting *State v. Brawner*, No. W2013-01144-CCA-R3-CD, 2014 WL 465743, at *2 (Tenn. Crim. App. Feb. 4, 2014)) (citations omitted).[4] "The determination of the proper consequences of the probation violation embodies a separate exercise of discretion." *Id.* (citing *State v. Reams*, 265 S.W.3d 423, 430 (Tenn. Crim. App. 2007)).

While it is "not necessary for the trial court's findings to be particularly lengthy or detailed", sufficient reasoning must exist to promote meaningful appellate review. *Dagnan*, 641 S.W.3d at 759 (*citing State v. Bise*, 380 S.W.3d 682, 705-06 (Tenn. 2012)). Moreover, this Court has repeatedly held that "an accused, already on [a suspended sentence], is not entitled to a second grant of probation or another form of alternative sentencing." *State v. Walden*, No. M2022-00255-CCA-R3-CD, 2022 WL 17730431, at *4 (Tenn. Crim. App. Dec. 16, 2022) (quoting *State v. Brumfield,* No. M2015-01940- CCA-R3-CD, 2016 WL 4251178, at *8 (Tenn. Crim. App. Aug. 10, 2016) (citations omitted)).

In this case, at the conclusion of its ruling, the trial court found that the defendant was "involved in the exact same activity" at the center of his original conviction. Further, the trial court noted the defendant's prior probation violation, stating that at that time the trial court "could have revoked the sixteen-years, but didn't." Although the trial court's consideration of alternative options for the defendant is limited to its notation of the defendant's first probation revocation, the record reflects the trial court eliminated alternative consequences as being no longer appropriate for the defendant, even if it did so implicitly. This is sufficient to show the trial court made a separate discretionary decision to impose incarceration. We conclude the trial court's statements are sufficient for our review and that no abuse of discretion was made.

## II.     The Trial Court's Denial of "Street Time" Credit

Lastly, the defendant asserts that the trial court erred by not granting the defendant credit for time successfully completed on probation. Pursuant to Tennessee Code

---

[4] Tennessee Code Annotated section 40-35-308(c)(1) statutorily limits trial courts to a maximum of one year extension of probation.

Annotated section 40-35-310(a), once a trial court has determined to revoke probation and order incarceration as the consequence, it then has the discretion to "credit against the original judgment by the amount of time the defendant has successfully served on probation and suspension of sentence prior to the violation or a portion of that amount of time." *State v. Williams*, 673 S.W.3d 255, 259 (Tenn. Crim. App. 2023)*.* The statute gives authority to the trial court to exercise its discretion to award or to deny credit for the time a defendant successfully serves on probation. *See id.* at 260 (quoting *State v. Smartt*, No. E2021-00125-CCA-R3-CD, 2021 WL 6143735, at *9 (Tenn. Crim. App. Dec. 30, 2021), *no perm. app. filed*).

Here, the trial court issued its ruling prior to the defendant's request for credit. The trial court stated that the defendant made no argument relative to street time and presented no evidence as to the amount of time the defendant successfully completed. Ultimately, the trial court denied the defendant's request. Because the defendant offered no evidence on the record as to the amount of time successfully spent on probation nor made any argument for its conferral, we cannot conclude that the trial court abused its discretion. The defendant is not entitled to relief.

## *Conclusion*

Based on the foregoing authorities and reasoning, we affirm the revocation of the defendant's probation and disposition.

_____
J. ROSS DYER, JUDGE